## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNIQUE INDUSTRIES, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   08-1095 (RMU) |
| | : | |
| v. | : | Re Document Nos.: 17, 25 |
| | : | |
| 965207 ALBERTA LTD., | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM OPINION

GRANTING THE DEFENDANT'S MOTION TO STRIKE AND
RESOLVING THE PARTIES' CROSS-MOTIONS FOR CLAIM CONSTRUCTION

### I. INTRODUCTION

The plaintiff commenced this action seeking a declaratory judgment that its products do not infringe on two design patents held by the defendant.  The defendant subsequently asserted counterclaims alleging patent infringement.  The matter is now before the court on the defendant's motion to strike the plaintiff's affirmative defense of inequitable conduct and on the parties' cross-motions for claim construction.  The court concludes that because the plaintiff has failed to plead inequitable conduct with particularity, that defense must be stricken.  Furthermore, the court resolves the parties' cross-motions for claim construction in the manner set forth in Part III.B below.

### II. FACTUAL & PROCEDURAL BACKGROUND

The plaintiff manufactures and markets party supplies such as balloons, paper goods, wrapping paper and novelty products.  Compl. ¶ 5.  At issue here is the plaintiff's line of number- and star-shaped "sparklers" – handheld fireworks that, when lit, emit sparks.  *Id.*

In early 2008, the defendant contacted the plaintiff asserting that the plaintiff's sparklers violated two design patents held by the defendant: U.S. Design Patent Nos. D447,207 ("the '207 Patent") and D451,164 ("the '164 Patent"). *Id.* ¶ 6; Def.'s Mot. for Claim Construction at 1. The '207 Patent is for a "Set of Numerical Sparklers," represented by the below figure:



Def.'s Mot. for Claim Construction, Ex. A ('207 Patent).

The '164 Patent is for a star-shaped sparkler represented by the below figure:



Def.'s Mot. for Claim Construction, Ex. B ('164 Patent).

On June 25, 2008, the plaintiff commenced this action seeking a declaratory judgment

that its line of sparklers does not infringe on the defendant's design patents. *See generally*

Compl. On September 10, 2008, the defendant responded to the complaint, asserting

counterclaims for patent infringement and tortious interference with a business relationship. *See*

Countercl. ¶¶ 12-29. The plaintiff answered the counterclaims on October 1, 2008, denying the

defendant's allegations of patent infringement and asserting variety of affirmative defenses. *See*

*generally* Pl.'s Answer to Countercl. On October 9, 2008, the plaintiff submitted an amended

answer to the defendant's counterclaims, supplementing its original answer with the affirmative

defense of inequitable conduct. Am. Answer to Countercl. ¶¶ 43-48. Specifically, the plaintiff

alleges that the defendant engaged in inequitable conduct by knowingly withholding from the

Patent and Trademark Office ("PTO") the prior art underlying its two design patents. *Id.*

On October 22, 2008, the defendant submitted a motion to strike the affirmative defense

of inequitable conduct, alleging that the plaintiff failed to plead that affirmative defense with

particularity as required by Federal Rule of Civil Procedure 9(b). *See generally* Def.'s Mot. to

Strike. The parties subsequently submitted cross-motions for claim construction. *See generally*

Def.'s Mot. for Claim Constuction ("Def.'s Mot."); Pl.'s Opp'n & Cross-Motion for Claim

Construction ("Pl.'s Opp'n"). The court addresses these matters in turn.

### III. ANALYSIS

#### A. Motion to Strike the Affirmative Defense of Inequitable Conduct

##### 1. Legal Standard for a Motion to Strike

The decision to grant or deny a motion to strike is vested in the trial judge's sound

discretion. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664-65 (7th Cir. 1992) (citing

*Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988)).  On its own

initiative or on a party's motion, the court may strike from a pleading any insufficient defense or

any redundant, immaterial, impertinent or scandalous matter in order to avoid the time, effort and

expense necessary to litigate spurious issues.  FED. R. CIV. P. 12(f); *Fantasy, Inc. v. Fogerty,*

*Inc.*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

Courts disfavor motions to strike.  *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine*

*Distribs. Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981) (citing 5C FED. PRAC. & PROC. 2d § 1380

at 783); *accord Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991); *Mirshak v. Joyce*,

652 F. Supp. 359, 370 (N.D. Ill. 1987); *Schramm v. Krischell*, 84 F.R.D. 294, 299 (D. Conn.

1979).  In considering a motion to strike, the court will draw all reasonable inferences in the

pleader's favor and resolve all doubts in favor of denying the motion to strike.  *Wailua Assocs. v.*

*Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 553-54 (D. Haw. 1998); *Joe Hand Promotions, Inc. v.*

*Nekos*, 18 F. Supp. 2d 214, 218 (N.D.N.Y. 1998); *Seibel v. Society Lease, Inc.*, 969 F. Supp. 713,

715 (M.D. Fla. 1997).  Consequently, the burden lies with the movant.  *Vakharia v. Little Co. of*

*Mary Hosp. & Health Care Ctrs.*, 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998).

### 2.  Legal Standard for Inequitable Conduct

To prove inequitable conduct in a patent claim, the accused infringer must demonstrate

that the applicant "(1) made an affirmative misrepresentation of material fact, failed to disclose

material information, or submitted false material information, and (2) intended to deceive the

[PTO]." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)

(quoting *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007)).  "[A]t least

a threshold level of each element – *i.e.*, both materiality and intent to deceive – must be proven

4

by clear and convincing evidence." *Id.* (citing *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006)).

Information is "material" in the context of an inequitable conduct claim if "a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *Id.* (quoting *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1297 (Fed. Cir. 2008)); *see also* 37 C.F.R. § 1.56(b) (providing that "information is material to patentability when it is not cumulative of information already of record or being made of record in the application and (1) it establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) [i]t refutes, or is inconsistent with, a position the applicant takes in: (i) [o]pposing an argument of unpatentability relied on by the [PTO], or (ii) [a]sserting an argument of patentability"). The existence of prior art may be material information under this standard. *See Rothman v. Target Corp.*, 556 F.3d 1310, 1323 (Fed. Cir. 2009) (observing that prior art is material if its existence would be important to the consideration of a patent application).

To satisfy the intent prong, the accused infringer "must prove that an applicant had the *specific intent* to . . . mislead[] or deceiv[e] the PTO. In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference." *Star Scientific*, 537 F.3d at 1366 (quoting *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995)). The Federal Circuit has cautioned that "materiality does not presume intent" and "the fact that information later found material was not disclosed cannot, by itself, satisfy the deceptive intent element of inequitable conduct." *Id.* (citing *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1340 (Fed. Cir. 2006)). Because, however, "direct evidence of deceptive intent is rarely

5

available, such intent can be inferred from indirect and circumstantial evidence." *Id.* (citing

*Cargill*, 476 F.3d at 1364).

### 3. The Plaintiff Has Failed to Plead Inequitable Conduct with the Requisite Particularity

The defendant contends that the plaintiff has failed to plead its affirmative defense of

inequitable conduct with particularity as required by Rule 9(b) of the Federal Rules of Civil

Procedure. *See generally* Def.'s Mot. to Strike. The defendant asserts that the plaintiff has failed

to identify what particular prior art was withheld, who withheld it or when the defendant became

aware of the existence of this unspecified prior art. *Id.* at 3. The plaintiff responds that its

allegations adequately set forth the "who," "what," "when" and "why" of the defendant's

inequitable conduct and therefore should not be stricken. *See generally* Pl.'s Opp'n.

The Federal Circuit has held that "inequitable conduct, while a broader concept than

fraud, must be pled with particularity."[1] *Cent. Admixture Pharmacy Servs., Inc. v. Advanced

Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (quoting *Ferguson

Beauregard/Logic Controls, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)); *see

also World Wide Stationery Mfg. Co., Ltd. v. U.S. Ring Binder, L.P.* 2009 WL 1684702, at *2

(E.D. Mo. June 16, 2009) (noting that an inequitable conduct claim must satisfy the heightened

pleading requirements of Federal Rule of Civil Procedure 9(b)). "Therefore, an inequitable

conduct defense to a patent infringement claim may be stricken pursuant to Rule 12(f) for failure

to plead with particularity." *Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200,

1211 (S.D. Cal. 2007).

---

[1]     The Federal Circuit has further held that "whether inequitable conduct has been adequately pled
is a procedural matter, but since it bears on an issue that 'pertains to or is unique to patent law,'
[the Circuit] will apply [its] own law to the question of whether the pleadings [are] adequate."
*Cent. Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347,
1356 (Fed. Cir. 2007) (citing *Intel Corp. v. Commonwealth Scentific & Indus. Research Org.*, 455
F.3d 1364, 1369 (Fed. Cir. 2006)).

In *Central Admixture*, the Federal Circuit upheld the district court's dismissal of an inequitable conduct claim for failure to plead with particularity. 482 F.3d at 1356-57. The defendant had alleged that "during the prosecution of the . . . patent, the patentee failed to disclose all of the relevant prior art known to it" and "by manipulation of various measurements and units . . . sought to mislead the [PTO] regarding the relationship between the claimed invention and the prior art." *Id*. at 1356. The Federal Circuit held that the pleading lacked the requisite particularity, noting that "[i]t [did] not identify what relevant and undisclosed prior art was known to the patentee, what 'measurements and units' were manipulated, or how that manipulation was meant to mislead the PTO." *Id*. at 1356-57; *cf. Multimedia Patent Trust*, 525 F. Supp. 2d at 1211 (holding that the defendant adequately pleaded inequitable conduct by identifying both the prior art allegedly withheld from the PTO as well as the agents and attorneys who breached their duty of candor).

In the instant case, the totality of the plaintiff's inequitable conduct defense consists of the following allegations: (1) that the six-pointed star in the '164 Patent is conventional and its configuration is part of the prior art, Am. Answer ¶ 44; (2) that the applicant for the '164 Patent, upon information and belief, was aware that the six-pointed star was prior art but withheld that information, *id*. ¶ 45; (3) that the forms illustrated in the '207 Patent are part of the prior art, *id*. ¶ 46; (4) that the applicant for the '207 Patent, upon information and belief, was aware that the figures constitute prior art but withheld that information from the PTO, *id*. ¶ 47; and (5) that this information was material, *id*. ¶ 48. These conclusory allegations fail to identify what prior art was allegedly withheld from the PTO or when the defendant became aware of that prior art. *See id*. ¶¶ 44-48. Furthermore, these assertions contain no factual allegations suggesting that the defendant specifically intended to mislead the PTO, nor do they identify in what way this

unspecified prior art was material. *See id*. Indeed, the plaintiff's allegations do little more than parrot the elements of the inequitable conduct defense without supporting any element with a specific factual allegation. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that although a claimant "does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal citations omitted). Because the plaintiff has failed to plead inequitable conduct with the requisite particularity, that defense is hereby stricken.

## B. Cross-Motions for Claim Construction

### 1. Legal Standard for Claim Construction for a Design Patent

"A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent." *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1319 (Fed. Cir. 2007). As in litigation over utility patents, claim construction is typically the first step in litigation over design patents. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 385 (1996); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). "Determining whether a design patent claim has been infringed requires, first, as with utility patents, that the claim be properly construed to determine its meaning and scope." *Elmer*, 67 F.3d at 1577; *see also Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1367 (Fed. Cir. 2004) (observing that the purpose of claim construction is to assign "a fixed, unambiguous, legally operative meaning to the claim").

The Federal Circuit recently clarified the proper scope of claim construction in design patent litigation. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). The court in *Egyptian Goddess* noted that although trial courts have a duty to conduct claim

construction in design patent cases as in utility patent cases, they need not "attempt to provide a

detailed verbal description of the claimed design, as is typically done in the case of utility

patents." *Id*. The court reasoned that

> Given the recognized difficulties entailed in trying to describe a design in words,
> the preferable course ordinarily will be for a district court not to attempt to
> 'construe' a design patent claim by providing a detailed verbal description of the
> claimed design.
>
> With that said, it is important to emphasize that a district court's decision
> regarding the level of detail to be used in describing the claimed design is a matter
> within the court's discretion, and absent a showing of prejudice, the court's
> decision to issue a relatively detailed claim construction will not be reversible
> error. At the same time, it should be clear that the court is not obligated to issue a
> detailed verbal description of the design if it does not regard verbal elaboration as
> necessary or helpful.

*Id*. at 679-80. Indeed, the *Egyptian Goddess* court noted that "in deciding whether to attempt a

verbal description of the claimed design, the court should recognize the risks entailed in such a

description, such as the risk of placing undue emphasis on particular features of the design and

the risk that a finder of fact will focus on each individual described feature in the verbal

description rather than on the design as a whole." *Id*. Thus, in the context of design patents, the

Federal Circuit has expressly affirmed minimal claim constructions that forego detailed verbal

descriptions and rely primarily on the illustration included in the patent. *See Contessa Food*

*Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002) (affirming the district court's

construction of a design patent claim to mean "a tray of a certain design, as shown in Figures 4-

5"); *see also Dexas Intern., Ltd. v. Office Max Inc.*, 2009 WL 252164, at *6-7 (E.D. Tex. Jan. 30,

2009) (construing a design patent claim to mean "[a] clipboard adapted to hold documents of a

certain design, as shown in Figures 1-7").

The *Egyptian Goddess* court noted, however, that although it may be "unwise" to attempt

a full description of the claimed design, the trial court may find it helpful to delineate certain

aspects of the design, such as the features of the design as they relate to prior art, conventions in design patent drafting (such as the use of broken lines) and distinctions between features of the claimed design that are ornamental and those that are functional. *See Egyptian Goddess*, 543 F.3d at 680. The Federal Circuit concluded that "the question of verbal characterizations of the claimed designs [is left] to the discretion of trial judges, with the proviso that as a general matter, those courts should not treat the process of claim construction as requiring a detailed verbal description of the claimed design, as would typically be true in the case of utility patents." *Id*.

### 2. Construction of the '207 and '164 Patents

In their cross-motions for claim construction, the parties raise the following issues for the court's resolution: (1) whether the '207 Patent is limited to number-shaped sparklers or includes the "?"-shaped sparkler; (2) whether the term "set" in the '207 Patent should be construed to cover only sparklers sold together in a single package; and (3) whether the claim should be construed to specify the precise configuration of each shape in the two patents. *See generally* Def.'s Mot.; Pl.'s Opp'n; Def.'s Reply. Because the parties have indicated that they prefer to rest on the papers and proceed without a formal *Markman* hearing, *see* Stipulation that Oral Argument is Not Needed (June 18, 2009), the court resolves the claim construction issues on the briefs submitted by the parties, *see Veltek Assocs., Inc., v. Steris Corp.*, 2008 WL 2669626, at *1 (E.D. Pa. July 3, 2008) (resolving claim construction on the briefs because the parties elected to forego a *Markman* hearing); *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 2002 WL 1751381, at *11 n.6 (N.D. Tex. Apr. 4, 2002) (noting that "[n]othing . . . mandates the use of a *Markman* hearing in every patent case" and that "[c]ourts retain the discretion to construe the claims on the basis of a paper record alone").

### (a) The '207 Patent Includes the "?"-Shaped Sparkler

The defendant asserts that the '207 Patent does not include the "?"-shaped sparkler displayed on the far right-hand side of Figure 1 of the patent. *See* Def.'s Mot. at 4-8; '207 Patent at 1. The defendant notes that the title of the '207 Patent, the language of the claim and the illustration descriptions contained in the patent all refer to a "set of *numerical* sparklers" (emphasis added). The defendant also notes that the patent examiner specifically added the term "numerical" throughout the patent application. Def.'s Mot., Ex. C.

The plaintiff responds that if the defendant wished to exclude the "?"-shaped sparkler from the claimed design, it easily could have followed convention and displayed this shape in broken lines. Pl.'s Opp'n at 5-6. Instead, it chose to include the "?"-shaped sparkler in solid lines, indicating that this figure was intended to form part of the "set" of numerical sparklers claimed by the defendant. *Id.*

A "patented design is defined by the drawings in the patent." *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312-13 (Fed. Cir. 2001) (quoting *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993)). The patented design "is a unitary thing and all of its portions are material in that they contribute to the appearance which constitutes the design." *In re Application of Blum*, 374 F.2d 904, 907 (Fed. Cir. 1967); *Contessa Food Prods.*, 282 F.3d at 1378 (observing that "[i]t has been consistently held for many years that it is the appearance of a design as a whole which is controlling in determining questions of . . . infringement"); *see also* PTO's Manual of Patent Examining Procedure ("MPEP") § 1503.02 (stating that "[t]here are no portions of a claimed design which are immaterial or unimportant"). Indeed, Federal Circuit precedent "makes clear that all of the ornamental features illustrated in

11

the figures must be considered in evaluating design patent infringement." *Contessa Food Prods.*, 282 F.3d at 1378.

"If features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design, *and the failure to do so signals inclusion of the features in the claimed design*."[2] *Id*. (citing *Door-Master*, 256 F.3d at 1312-13) (emphasis added). In *Door-Master*, which concerned a design patent for a cabinet door, the defendant argued that the door's rear features, depicted in two drawings included in the design patent, did not form a part of the patented design, but rather only appeared in the patent to fully show the article of manufacture. 256 F.3d at 1313. Noting that the rear features were neither functional, nor hidden from view, nor illustrated in broken lines, the court concluded that the rear features formed part of the patented design. *Id*.; *see Lawman Armor Corp. v. Master Lock Co.*, 2004 WL 440177, at *4 (E.D. Pa. Mar. 11, 2004) (noting that the fact that the figures illustrated in the design patent do not delineate any broken lines "signals that the patentee intended to protect the entire design as pictured, not just a portion thereof").

Each of the five illustrations included in the '207 Patent includes the "?"-shaped sparkler and depicts that sparkler in solid lines. *See* '207 Patent at 1-6. There is no indication that "?"-shaped sparkler is functional or hidden from view. *See id*. Accordingly, the defendant's failure

---

[2]     Indeed, even those portions of a claimed design that are depicted in broken lines may be considered part of the patented design if it is not clear that the inventor intended to exclude those portions from the claim. *See Bernardo Footwear, L.L.C. v. Fortune Dynamics, Inc.*, 2007 WL 4561476, at *1 (S.D. Tex. Dec. 24, 2007) (concluding that "in this case where the broken lines create the visual image of decorative stitching, the Court construes the broken lines as part of the claimed design as depicted in the drawing"); *see also* MPEP § 1503.02 (stating that the "specification should make it clear that the structure shown in broken lines is not part of the design sought to be patented").

to depict the "?"-shaped sparkler in broken lines signals the inclusion of that shape in the claimed design. *See Contessa Food Prods.*, 282 F.3d at 1378.

Indeed, patentees typically include complimentary figures illustrated in broken lines to "explain the environment in which the patent exists." *Wahl v. Rexnord, Inc.*, 624 F.2d 1169, 1173 (3rd Cir. 1980). For instance, if the patented design is for the handle to a saucepan, the image of a saucepan, though not part of the patented design, may be included in broken lines to place the patented design in the proper spatial context. *See, e.g., Calphalon Corp. v. Meyer Corp.*, 2006 WL 2474286, at *2 (E.D. Cal. Aug. 25, 2006)

Although the defendant suggests that the "?"-shaped sparkler – even if not depicted in broken lines – serves a similar purpose, Def.'s Mot. at 3-8, it fails to articulate how the "?"-shaped sparkler provides meaningful context for or explains the environment of the other sparkler shapes in the '207 Patent, *see generally id*. To the contrary, the "?"-shaped sparkler appears to be as much a part of the claimed design as any other figure illustrated in the patent. *See generally* '207 Patent.

As for the defendant's argument that the '207 Patent refers to a "set of numerical sparklers," Def.'s Mot. at 4-7, the Federal Circuit has stated that a design patent "is defined by the drawings in the patent," *Door-Master*, 256 F.3d at 1312-13; *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1464 (Fed. Cir. 1997) (observing that "the drawings are the claims to the patented subject matter" in a design patent). The PTO's Manual of Patent Examining Procedure, which governs the examination of all patents, Def.'s Mot. at 5, underscores the primacy of the drawings over the written descriptions in a design patent, stating that "[t]he title of the design identifies the article in which the design is embodied by the name generally known and used by the public *but it does not define the scope of the claim*," MPEP § 1503.01 (emphasis added).

Indeed, "[n]o description of the design in the specification beyond a brief description of the drawing is generally necessary, since as a rule the illustration in the drawing views is its own best description." *Id.*

Furthermore, the court sees no reason that a "set of numerical sparklers" necessarily cannot include what the defendant itself characterizes as a "complimentary" figure. *See* Def.'s Mot. at 3. Nothing in the '207 Patent expressly excludes non-numerical figures from the set of figures comprising the patented design. *See generally* '207 Patent. For these reasons, the court construes the '207 Patent to include the "?"-shaped sparkler illustrated in the drawings included in the patent.

### (b) The '207 Patent Encompasses a "Set" of Sparklers, Whether Packaged or Sold Together or Separately

The defendant contends that the "set" of numerical sparklers protected by the '207 Patent should be construed to encompass "any collection" of substantially similar sparklers, regardless of whether they are packaged and sold together or individually. Def.'s Mot. at 8. The plaintiff maintains that whether the "set" includes sparklers packaged and sold separately is a question of fact to be assessed during the infringement stage of the litigation and that it would be improper to expand the scope of '207 Patent to include "any collection" of substantially similar sparklers. Pl.'s Opp'n at 4-5.

The question of whether the term "set" encompasses sparklers sold individually as well as those packaged together is addressed to the meaning of the patent language and is therefore properly resolved at this stage of the litigation. *See Liquid Dynamics*, 355 F.3d at 1367 (noting the trial court's obligation during claim construction to assign a fixed and unambiguous meaning to the claim); *see also Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298,

1306 (Fed. Cir. 2003) (affirming in part the district court's claim construction of ambiguous terms in the patent, such as "protrusion" and "generally parallel").

In performing claim construction, courts generally give the words of a patent claim the "ordinary and customary meaning" they possess in the field of invention. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *accord Anchor Wall Sys.*, 340 F.3d at 1306 (noting that "[t]o help inform the court of the ordinary meaning of the words, a court may consult a dictionary, encyclopedia, or treatise"). Here, the parties do not indicate that the term "set" has some specialized meaning in the context of sparklers or similar products. *See generally* Def.'s Mot.; Pl.'s Opp'n; Def.'s Reply. The court notes, however, that the ordinary meaning of the term "set" encompasses a broader spectrum of goods than those that are sold or packaged together. *See* MERRIAM-WEBSTER'S DICTIONARY 1071 (10th ed. 1999) (defining a "set" as a "a number of things of the same kind that belong or are used together"). As this definition suggests, the term "set" applies to products that are sold and packaged separately but still "belong together," such as a "set" of bedroom furniture or a "set" of tires. *See id.* Accordingly, the court will construe the term "set" to encompass sparklers that are sold or packaged individually but that "belong or are used together."

The court, however, declines the defendant's request to substitute "any collection" for the term "set." The term "collection" could be understood to encompass nearly any grouping of objects, regardless of whether they "belong or are used together." *See* MERRIAM-WEBSTER'S DICTIONARY 225 (10th ed. 1999) (defining the term "collection" as a "group" or "aggregate"). This substitution would expand the scope of the '207 Patent beyond its permissible bounds.

**(c) The Claims Are Not Limited to the Precise Configurations of the Figures Illustrated**

The proposed claim constructions offered by the plaintiff and the defendant differ markedly in their levels of specificity. *See* Pl.'s Opp'n at 7-8; Def.'s Mot. at 12. The plaintiff would construe the claim to require the precise configuration of each shape in the '207 Patent and the '164 Patent.[3] *See* Pl.'s Opp'n at 7-8. The defendant, unsurprisingly, offers a far broader construction of the two patents. *See* Def.'s Mot. at 12.

As previously discussed, the Federal Circuit recently cautioned trial courts against attempting to offer detailed claim constructions in design patent cases and expressly endorsed minimal claim constructions that rely principally on the drawings in the patents themselves. *See Egyptian Goddess*, 543 F.3d at 679-80; *Contessa Food Prods.*, 282 F.3d at 1377. Although the plaintiff suggests that a detailed claim construction is necessary to distinguish the claimed design from the prior art, Pl.'s Opp'n at 6-7, the plaintiff has identified no prior art relating to the patents at issue, *see generally* Pl.'s Opp'n.[4]

Accordingly, the court construes the '207 Patent and the '164 Patent as follows:

> The '207 Patent is construed as the ornamental design of a set of sparklers, as shown in Figures 1-5 of the patent. The patented design includes all of the sparklers illustrated in the drawings, including the number-shaped sparklers and the "?"-shaped sparkler. The term "set" encompasses sparklers that belong or are used together, regardless of whether they are packaged or sold together or separately.

---

[3]  The plaintiff proposes, for instance, that the '207 Patent be construed as including a set of sparklers "wherein the '0' sparkler has an oval configuration with the upper portion being wider than the lower and the lower portion merging to meet the stem of the sparkler; and the '1' sparkler is longer than the '0' sparkler and . . . wherein the '2' sparkler and the '3' sparkler are noticeably different in the curvature of the upper portions, with the '3' sparkler having a pronounced narrower radius . . . ." Pl.'s Opp'n at 7-8. The plaintiff proposes that the '164 Patent be construed as "a sparkler configured as a six-pointed star of David having a depending portion merging into the stem of the sparkler that is a continuation of a point of the star." *Id.* at 8.

[4]  "[I]f the accused infringer elects to rely on the comparison [to] prior art as part of its defense against the claim of infringement, the burden of production of that prior art is on the accused infringer." *Egyptian Goddess*, 543 F.3d at 679.

The '164 Patent is construed as the ornamental design of a star-shaped sparkler, as shown in Figures 1-4 of the patent.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss the plaintiff's "inequitable conduct" affirmative defense and construes the '207 Patent and the '164 Patent in the manner described above.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 22nd day of July, 2009.

RICARDO M. URBINA
United States District Judge

US00D447207B1

(12) **United States Design Patent**          (10) Patent No.:          **US D447,207 S**

Sharma          (45) **Date of Patent:**          ✷✷ **Aug. 28, 2001**

(54)  **SET OF NUMERICAL SPARKLERS**

(75)  Inventor:  **Alok Sharma**, Calgary (CA)

(73)  Assignee:  **Samrok Canada Inc.**, Calgary (CA)

(✷✷)  Term:  **14 Years**

(21)  Appl. No.:  **29/134,277**

(22)  Filed:  **Dec. 19, 2000**

(51)  LOC (7) Cl. ......................................... **22-03**

(52)  U.S. Cl. ............................................ **D22/112**

(58)  Field of Search ..................... D22/100, 112,
      D22/199; D21/379, 470; D26/5, 6, 7; 102/335,
      336, 344, 361, 518, 519; D10/59

(56)  **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D. 246,008 | * | 10/1977 | Tanikawa | D26/7 |
| D. 246,009 | * | 10/1977 | Tanikawa | D26/7 |
| D. 249,588 | * | 9/1978 | Tanikawa | D26/7 |
| D. 313,628 | * | 1/1991 | Delcambre | D21/470 X |
| D. 344,543 | * | 2/1994 | Lemon | D19/59 |
| 910,755 | * | 1/1909 | Welter | 102/335 |
| 1,936,221 | * | 11/1933 | Adler | 102/335 |
| 2,611,254 | * | 9/1952 | Byrnes | D26/7 |

* cited by examiner

*Primary Examiner*—Louis S. Zarfas
*Assistant Examiner*—Monica A. Weingart
(74) *Attorney, Agent, or Firm*—George A. Seaby

(57)          **CLAIM**

The ornamental design for a set of numerical sparklers, as shown and described.

**DESCRIPTION**

FIG. 1 is a front elevational view of the set of numerical sparklers, the rear view being the mirror image thereof;
FIG. 2 is a top elevational view of the set of numerical sparklers.
FIG. 3 is a bottom elevational view thereof;
FIG. 4 is a side elevational view of the set of numerical sparklers as seen from the right in FIG. 1; and,
FIG. 5 is a side elevational view of the set of numerical sparklers as seen from the left in FIG. 1.

1 Claim, 4 Drawing Sheets





FIG. 1



FIG. 2

FIG. 3



FIG. 4



*FIG. 5*

US00D451164B1

(12) **United States Design Patent**    (10) Patent No.:    **US D451,164 S**

Sharma    (45) **Date of Patent:**    ✱✱ **Nov. 27, 2001**

(54) **SPARKLER**

(75) Inventor: **Alok Sharma**, Calgary (CA)

(73) Assignee: **Samrok Canada Inc.**, Calgary (CA)

(✱✱) Term: **14 Years**

(21) Appl. No.: **29/136,851**

(22) Filed: **Feb. 8, 2001**

(51) **LOC (7) Cl.** ........................................ **22-03**
(52) **U.S. Cl.** ................................................ **D22/112**
(58) **Field of Search** .................................. D22/100, 112, D22/199; 102/335, 349, 355; D11/95, 96, 97, 98, 99, 108; D26/1, 4, 6, 7; D99/25

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D. 234,776 | * | 4/1975 | Moskowitz et al. | D11/96 |
| D. 246,398 | * | 11/1977 | Raulson | D99/25 X |
| D. 246,607 | * | 12/1977 | Radisich | D11/96 X |
| D. 247,193 | * | 2/1978 | Maxwell | D26/7 X |
| 910,755 | * | 1/1909 | Welter | 102/335 |
| 1,936,221 | * | 11/1933 | Adler | 102/335 |

* cited by examiner

*Primary Examiner*—Louis S. Zarfas
*Assistant Examiner*—Monica A. Weingart
(74) *Attorney, Agent, or Firm*—George A. Seaby

(57) **CLAIM**

The ornamental design for a sparkler, as shown and described.

**DESCRIPTION**

FIG. **1** is a front elevational view of the sparkler;
FIG. **2** is a top elevational view thereof;
FIG. **3** is a bottom elevational view thereof; and,
FIG. **4** is a side elevational view thereof, the other side being the mirror image thereof.

1 Claim, 1 Drawing Sheet



**U.S. Patent**                    **Nov. 27, 2001**                    **US D451,164 S**



*FIG. 2*



*FIG. 1*                    *FIG. 4*

*FIG. 3*