# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UNIQUE INDUSTRIES, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 08-1095 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 38, 39, 40, 41, 42, 50 |
| | : | | |
| 965207 ALBERTA LTD., | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

RE-OPENING DISCOVERY FOR A PERIOD OF NINETY DAYS; SANCTIONING PLAINTIFF'S
COUNSEL FOR FAILING TO COMPLY WITH THE COURT'S SCHEDULING ORDERS; DENYING
WITHOUT PREJUDICE THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT;
DENYING THE PLAINTIFF'S MOTION FOR LEAVE TO AMEND

## I. INTRODUCTION

The defendant is the holder of two design patents for numerical and star-shaped sparklers, a type of firework that throws off sparks when lit. The plaintiff, a company that also produces numerical and star-shaped sparklers, commenced this action seeking a declaratory judgment that its products do not infringe on the defendant's design patents. The plaintiff also challenges the validity of the defendant's patents. The defendant maintains that its patents are valid and has asserted counterclaims against the plaintiff for patent infringement.

This matter is now before the court on the parties' cross-motions for summary judgment. The defendant has filed motions for summary judgment that its design patents are not invalid, that the plaintiff's products infringe on those patents and that the plaintiff's infringement has been willful. The plaintiff, in turn, has moved for summary judgment that its products are non-infringing. In addition, the plaintiff has moved to amend its pleadings to supplement the factual

allegations underlying its affirmative defenses, to raise new affirmative defenses and a new claim and to add new defendants to the suit.

In its submissions, the plaintiff relies on evidence of prior art that was not disclosed to the defendant until after the close of discovery. As discussed below, the plaintiff's failure to disclose this evidence before the discovery deadline – indeed, on the eve of the deadline for filing motions for summary judgment – indicates at best an utter lack of diligence and at worst bad faith. This conduct constitutes a clear violation of this court's scheduling orders. It also prejudices the defendant, which was deprived an opportunity to investigate or properly address this new evidence before preparing its final contentions and motions for summary judgment. Most troubling, however, is the fact that this new evidence may prove to be very relevant to the validity of the patents at issue.

Because of the public interest in assessing the validity of the patents, as well as the availability of less drastic measures to mitigate the prejudice to the defendant, the court shall not disregard this evidence, as the defendant suggests. Instead, the court shall re-open discovery for a period of ninety days to permit the defendant an opportunity to investigate the evidence of prior art disclosed after the discovery deadline. As a result, the court denies without prejudice the parties' cross-motions for summary judgment with leave to renew those motions following the close of this period of additional discovery. To mitigate the resulting prejudice to the defendant, the court orders plaintiff's counsel to pay the reasonable attorney's fees and costs incurred by the defendant as a result of the plaintiff's failure to comply with the court's orders. Lastly, the court denies the plaintiff's motion for leave to amend on the grounds of undue delay and unfair prejudice.

## II. FACTUAL & PROCEDURAL BACKGROUND

The plaintiff manufactures and markets party supplies such as balloons, paper goods, wrapping paper and novelty products, such as sparklers. Compl. ¶ 5. In early 2008, the defendant contacted the plaintiff asserting that the plaintiff's sparklers violated two design patents held by the defendant: U.S. Design Patent Nos. D447,207 ("the '207 Patent") and D451,164 ("the '164 Patent"). *Id.* ¶ 6; Def.'s Mot. for Claim Construction at 1. The '207 Patent is for a "Set of Numerical Sparklers," represented by the below figure:



Def.'s Mot. for Claim Construction, Ex. A ('207 Patent).

The '164 Patent is for a star-shaped sparkler represented by the below figure:



Def.'s Mot. for Claim Construction, Ex. B ('164 Patent).

In June 2008, the plaintiff commenced this action seeking a declaratory judgment that its line of sparklers does not infringe on the defendant's design patents. *See generally* Compl. In September 2008, the defendant responded to the complaint by asserting counterclaims of patent infringement. *See generally* Countercl. The plaintiff answered the counterclaims in October 2008, denying the defendant's allegations of patent infringement and asserting a variety of affirmative defenses, including patent invalidity and inequitable conduct. *See generally* Answer to Countercl.; Am. Answer to Countercl.

At the initial status hearing held in early November 2008, the court established deadlines for the exchange of expert reports, final contentions and the close of discovery. Minute Entry (Nov. 3, 2008). These deadlines were based largely on dates proposed by the parties in the joint report they submitted prior to the hearing. *See generally* Joint 16.3 Scheduling Report (Oct. 27, 2008). The court ordered that discovery on liability would close on January 26, 2010, with the case on damages to follow the resolution of motions for summary judgment on the issue liability. *Id.*

In July 2009, the court granted the defendant's motion to dismiss the plaintiff's defense of inequitable conduct because that claim was not pleaded with sufficient particularity.[1] Mem. Op. (July 22, 2009) at 3-8. In the same ruling, the court resolved the parties' cross-motions for claim construction. *Id.* at 8-17. The court construed the '207 Patent and the '164 Patent in the following manner:

---

[1]     More specifically, the court concluded although the plaintiff alleged that the defendant had engaged in inequitable conduct by knowingly withholding from the Patent and Trademark Office ("PTO") prior art invalidating its two design patents, the plaintiff had not identified what prior art the defendant withheld from the PTO and had provided no factual allegations suggesting that the defendant specifically intended to mislead the PTO. Mem. Op. (July 22, 2009) at 7-8.

The '207 Patent is construed as the ornamental design of a set of sparklers, as shown in Figures 1-5 of the patent. The patented design includes all of the sparklers illustrated in the drawings, including the number-shaped sparklers and the "?"-shaped sparkler. The term "set" encompasses sparklers that belong or are used together, regardless of whether they are packaged or sold together or separately.

The '164 Patent is construed as the ornamental design of a star-shaped sparkler, as shown in Figures 1-4 of the patent.

*Id.* at 16-17.

On January 20, 2010, the court granted the parties' joint motion to extend the January 26 discovery deadline set during the initial status hearing. Minute Order (Jan. 20, 2010). The court ordered the parties to complete discovery on liability by March 26, 2010, exchange final contentions by April 12, 2010 and file any motions for summary judgment by April 27, 2010. *Id.*

The parties exchanged final contentions as directed on April 12, 2010. In its final contentions, the plaintiff asserted that the inventor listed for the '207 Patent and the '164 Patent – Alok Sharma, a principal of the defendant – had appropriated the designs for these patents from numerical and star-shaped sparklers manufactured by a Czech company, Drutep Teplice ("Drutep"), years before Sharma applied for his patents. *See* Def.'s Mot. for Summ. J. on Validity of the Design Patents ("Def.'s Validity Mot."), Ex. 7 at 1-3. The plaintiff also identified a number of companies and individuals who would verify that the sparklers in the designs patented by the defendant had been commercially available in Europe, China and Australia before Sharma applied for his patents. *Id*. Furthermore, the plaintiff attached to its final contentions a series of photographs purporting to illustrate these earlier-available sparklers. *Id.* at 8-15.

None of this evidence regarding prior art had been disclosed to the defendant before discovery closed. Def.'s Validity Mot., Ex. 9. The defendant objected to the inclusion of this new material in the plaintiff's final contentions and initiated a conference call with the undersigned judge's law clerk on April 15, 2010 to relay its concerns to the court. *Id.* During the call, the parties reached an agreement that would permit them to keep the previously-imposed litigation schedule, which called for the submission of motions for summary judgment by April 27, 2010. *See* Minute Order (Jan. 20, 2010). Specifically, the parties agreed that the plaintiff would not use any evidence disclosed after the discovery deadline at the summary judgment stage and the defendant would not move for sanctions at that time. Def.'s Validity Mot., Ex. 10.

Accordingly, on April 27, 2010, the defendant moved for summary judgment that its design patents are not invalid. *See generally* Def.'s Validity Mot. In addition, the defendant moved for summary judgment on the issue of infringement. *See generally* Def.'s Mot. for Summ. J. that the Pl.'s Star Sparklers Infringe Patent D451,164; Def.'s Mot. for Summ. J. that the Pl.'s Numerical Sparklers Infringe Patent D447,207. Finally, the defendant filed a motion for summary judgment that the plaintiff's infringement has been willful. *See generally* Def.'s Mot. for Summ. J. that the Pl.'s Infringement of Patent D451,164 and D447,207 Has Been Willful. The plaintiff, in turn, filed a motion for summary judgment that its products do not infringe on the defendant's design patents. *See generally* Pl.'s Mot. for Summ. J. for Non-Infringement.

In late May 2010, the plaintiff filed its oppositions to the defendant's motions for summary judgment. In its opposition to the defendant's motion regarding the validity of its design patents, the plaintiff asserts, *inter alia*, that Alok Sharma is not the inventor of the designs illustrated in the patents. Pl.'s Opp'n to Def.'s Validity Mot. at 6-7. In support of that contention, the plaintiff has attached to its opposition the evidence of prior art first disclosed as

part of the plaintiff's final contentions. *Id.*, Verified Statement of Kerry Healy; *id.*; Verified Statement of Nick Dale.

Also in late May, the plaintiff filed a motion for leave to amend its pleadings to incorporate the evidence of prior art attached to its final contentions. *See generally* Pl.'s Mot. for Leave to Amend. Specifically, the plaintiff seeks leave to amend its affirmative defenses to incorporate the allegation that other companies had been marketing sparklers in the same ornamental design for years before Sharma applied for his patent. *Id.*, Ex. A at 14-15, 18-20. The plaintiff also seeks leave to assert a claim of inequitable conduct against the defendant and Sharma based on the allegation that Sharma intentionally withheld information about this prior art in his submissions to the PTO. *Id.* at 22-25. Finally, the plaintiff seeks leave to add Sharma and Samrok Canada, Inc., a company controlled by Sharma, as defendants in this case. Pl.'s Mot. for Leave to Amend at 3. The plaintiff has proposed that the court re-open discovery for a period of ninety days to permit the parties to investigate the allegations raised in its proposed amended pleading. *Id.*

The motions referenced above are ripe for adjudication. The court therefore turns to the applicable legal standards and the parties' arguments.

## III. ANALYSIS

### A. The Court Denies Without Prejudice the Defendant's Motion for Summary Judgment on the Validity of Its Patents and Sanctions Plaintiff's Counsel for Failing to Comply With the Court's Scheduling Orders

#### 1. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

## 2. The Court Cannot Determine At This Time Whether the Plaintiff Can Demonstrate the Invalidity of Either Patent at Issue

The defendant argues that it is entitled to summary judgment on the validity of the '207 Patent and the '164 Patent because the plaintiff has not produced any evidence of prior art that would call into question the validity of those patents. *See generally* Def.'s Validity Mot. The defendant asserts that although the plaintiff produced a smattering of prior art before the discovery deadline, none of that prior art has any bearing on the design patents at issue; indeed, the plaintiff chose not to rely on this prior art in its final contentions. *Id.* at 2-3. Furthermore, the defendant states that although the plaintiff disclosed additional evidence of prior art with its final contentions, the court should not consider it because it was produced after the discovery deadline and the plaintiff agreed not to rely on it on summary judgment. *Id.* at 3-4. Thus, the defendant argues, the plaintiff has produced no evidence of invalidating prior art and the court should grant summary judgment to the defendant on the validity of the patents. *Id.* at 5-6.

The plaintiff responds that there is significant evidence that the defendant's patents are invalid. *See generally* Pl.'s Opp'n to Def.'s Validity Mot. The plaintiff asserts that the defendant's designs are entirely conventional and therefore not patentable. *Id.* at 3-5. The plaintiff also contends that summary judgment is precluded due to the defendant's spoliation of evidence. *Id.* at 5-6. More specifically, the plaintiff contends that Sharma's patent agent, George Seaby, discarded the original drawings allegedly sent to him by Sharma in connection with the patents at issue. *Id.* Lastly, the plaintiff contends that Sharma is not the inventor of the designs illustrated in the '207 Patent and the '164 Patent. *Id.* at 6-7. In support of that contention, the plaintiff relies on the evidence of prior art first disclosed as part of its final contentions – namely, evidence that sparklers in the same ornamental designs had been available

in Europe long before Sharma obtained his design patents.  *Id.*, Verified Statement of Kerry Healy; *id.*, Verified Statement of Nick Dale.

"A patent is presumed valid and the party asserting invalidity has the burden of persuasion to show the contrary by clear and convincing evidence."  *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 870 (Fed. Cir. 2010) (citing *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008)).  At the outset of an invalidity challenge, "[t]he challenger has the burden of going forward with invalidating prior art."  *Id.* (citing *Tech. Licensing Corp.*, 545 F.3d at 1327).  "The patentee then has the burden of going forward with evidence to the contrary, *i.e.*, the patentee must show that the prior art does not actually invalidate the patent or that it is not prior art because the asserted claim is entitled to the benefit of an earlier filing date."  *Id.* (citing *Tech. Licensing Corp.*, 545 F.3d at 1327; *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304-06 (Fed. Cir. 2008)); *accord Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376-77 (Fed. Cir. 2009) (observing that "[o]nce the challenger presents initially persuasive evidence of invalidity, the burden of going forward shifts to the patentee to present contrary evidence and argument" (citing *Tech. Licensing Corp.*, 545 F.3d at 1327)).  "Ultimately, the outcome of the trial on this point will depend on whether, in light of all the evidence, the party challenging the patent's validity has carried its burden of persuasion to prove by clear and convincing evidence that the patent is invalid."  *Titan Tire Corp.*, 566 F.3d at 1377 (citing *Tech. Licensing Corp.*, 545 F.3d at 1328).

### a.  Originality of the Defendant's Patented Designs

The plaintiff begins its attack on the validity of the patent by calling into question the originality of the defendant's patented designs.  Pl.'s Opp'n to Def.'s Validity Mot at 2-4; *see also* 35 U.S.C. § 171(a) (providing that "[w]hoever invents any *new, original* and ornamental

design for an article of manufacture may obtain a patent therefor[e]") (emphasis added). Specifically, the plaintiff asserts that its own sparklers are based on conventional, existing designs, such as public domain fonts and earlier designs for birthday candles. Pl.'s Opp'n to Def.'s Validity Mot at 3-4; *see also* Pl.'s Mot. for Non-Infringement, Decl. of Joseph Italiano ("Italiano Decl.") ¶¶ 3-12, 27-28.[2] Because its sparklers are based on conventional designs, the plaintiff argues, the defendant's design patents cannot encompass the plaintiff's products and still be valid because the patents would then encompass conventional, existing designs. Pl.'s Opp'n to Def.'s Validity Mot. at 2-4; *see also* Pl.'s Opp'n to Def.'s Validity Mot. at 2-4.

Yet to demonstrate that these conventional designs invalidate the defendant's patented designs, the plaintiff was required to offer some evidence that the conventional designs share the same overall visual appearance as the patented designs. *See Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (noting that in assessing whether prior art invalidates a patent, the court must consider whether prior art "create[s] the same overall visual appearance as the claimed design"). The plaintiff, however, has offered no evidence comparing the visual impression created by the conventional designs and the visual impression created by the defendant's designs. *See generally* Pl.'s Opp'n to Def.'s Validity Mot.

Instead, the plaintiff reasons that because the conventional designs are similar to the plaintiff's sparklers and the plaintiff's sparklers are, according to the defendant, similar to the defendant's designs, the defendant's designs must be similar to the conventional designs. *Id.* at 2-4. This argument is flawed. Although Italiano states that he "consulted" conventional designs and that the plaintiff's sparklers "resemble" and are "similar to" existing designs for birthday candles, Italiano Decl. ¶¶ 3-10, he acknowledges that the plaintiff's sparklers are not identical to these conventional designs, *id.* ¶¶ 13-25. Given these differences in appearance, it does not

_____

[2]     Joseph Italiano was employed by the plaintiff to design its line of sparklers. Italiano Decl. ¶ 2.

follow as a matter of logic, as the plaintiff suggests, that any similarity between the defendant's patented designs and the plaintiff's sparklers necessarily entails a similarity between the defendant's patented designs and the conventional designs.  In fact, Italiano suggests in his declaration that both the plaintiff's sparklers and the conventional designs which they resemble, differ in appearance from the defendant's patented designs.  *See, e.g.*, Italiano Decl. ¶ 13 (stating that the plaintiff's "1" sparkler "has the same ornamentation" as a "1" birthday candle marketed by the plaintiff but "is noticeably different in ornamental design from the numeral '1' sparkler of the '207 patent"); *see also id.* ¶¶ 14-25.  Thus, the plaintiff's assertion that its own sparklers resemble conventional designs does not raise a genuine of issue of fact as to the validity of the defendant's designs.

The only other evidence offered by the plaintiff regarding the originality of the defendant's designs – other than the evidence of prior art disclosed after discovery, which is discussed below – is a snippet of testimony from Sharma's deposition, in which Sharma testified that he "tried to make a standard star" when he designed the '164 Patent.  Pl.'s Opp'n to Def.'s Validity Mot., Decl. of Gerard Dunne ("Dunne Decl."), Ex. C.  This testimony, however, is of limited significance at best.  As an initial matter, Sharma's testimony does not address the originality of the numerical sparkler designs in the '207 Patent.  *See id.*  Moreover, even if this deposition testimony provides some indication of Sharma's *intent* at the time he designed the star-shaped sparkler, it is well established that the originality of a patented design turns on its appearance, not the designer's intent.  *See Gorham Mfg. Co. v. White*, 81 U.S. 511, 524 (1871) (noting that the patentability of a design resides in its appearance); *see also In re Harvey*, 12 F.3d 1061, 1064 (Fed. Cir. 1993) (observing that the focus of the court's inquiry into the validity of a patent is on its appearances rather than its uses); *cf.* 35 U.S.C. § 103(a) ("Patentability shall not

be negatived by the manner in which the invention was made."). Because the originality of the '164 Patent depends on its visual appearance in relation to the prior art, whether Sharma intended to create a "standard star" (whatever that may be) or a "novel star" is not directly relevant to the inquiry. What would be relevant – evidence of prior art having the same visual appearance as the defendant's patented designs – the plaintiff has not placed in the record (with the exception of the evidence of prior art disclosed after discovery deadline). As a result, the plaintiff has not raised a genuine issue of material fact with respect to the originality of the plaintiff's designs.

### b. Spoliation of Evidence

The plaintiff next argues that the defendant should not be granted summary judgment because Sharma's patent agent, Seaby, failed to maintain the original drawings that Sharma allegedly sent to Seaby in connection with the patents at issue. Pl.'s Opp'n to Def.'s Validity Mot. at 5-6. Indeed, the spoliation of evidence can, in certain circumstances, can give rise to an adverse inference against the party that failed to maintain the evidence. *See Bolger v. Dist. of Columbia*, 608 F. Supp. 2d 10, 30 (D.D.C. 2009) (citing *Mazloum v. D.C. Metro. Police Dep't*, 530 F. Supp. 2d 282, 291 (D.D.C. 2008)). Yet the "destruction of evidence, standing alone, is [not] enough to allow a party who has produced no evidence – or utterly inadequate evidence – in support of a given claim to survive summary judgment on that claim." *Talavera v. Fore*, 648 F. Supp. 2d 118, 133-34 (D.D.C. 2009) (quoting *von Muhlenbrock v. Billington,* 579 F. Supp. 2d 39, 45 (D.D.C. 2008)); *see also Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (observing that "[i]n borderline cases, an inference of spoliation, in combination with 'some (not insubstantial) evidence' for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment (citing *Kronish v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).

In this case, the plaintiff has presented almost no evidence that the patents at issue are invalid, beyond the evidence of prior art disclosed after the discovery deadline. *See generally* Pl.'s Opp'n to Def.'s Validity Mot. In addition, although the plaintiff suggests that Seaby had an obligation to preserve Sharma's drawings because patent litigation is always a possibility, it has cited no authority for this blanket proposition. *See* Pl.'s Opp'n to Def.'s Validity Mot. at 5; *see also Kronish*, 150 F.3d at 126 (noting "for an adverse inference to arise from the destruction of evidence, the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed"). Furthermore, the only explanation offered for how these records would have supported its invalidity defense is the plaintiff's vague speculation that these materials "would help establish whether the drawings for the ornamental designs of the patents asserted in this matter had been hand drawn by Mr. Sharma[,] or if the drawings had been made from pre-existing sparklers already manufactured."[3] Dunne Decl. ¶ 12; *see also Bolger*, 608 F. Supp. 2d at 30 (noting that for an adverse inference to be warranted, the missing evidence must have been "'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it"). Thus, the plaintiff has not shown that Seaby's alleged failure to maintain Sharma's original drawings warrants the withholding of summary judgment on the issue of validity.

---

[3] Plaintiff's counsel states in this declaration that "Sharma testified that the drawings for [the '207 Patent] were not exact to his drawings because of production issues. This suggests the patent drawings were made from pre-existing sparklers, and not photocopies of bent wire with sparkler materials." Dunne Decl. ¶ 11. How the former "suggests" the latter, however, is simply not clear and is not explained by counsel.

**c. Inventorship of the Defendant's Patented Designs and the Plaintiff's Failure to Comply With the Court's Scheduling Orders**

Lastly, the plaintiff contends that the design patents are not valid because Sharma, the defendant's principal, did not, in fact, invent those designs. Pl.'s Opp'n to Def.'s Validity Mot. at 6-7. In support of that contention, the plaintiff has submitted statements from two employees of Octavius Hunt Limited ("Octavius"), a British company that markets decorations. *See generally id.*, Statement of Kerry Healy; *id.*, Statement of Nick Dale. Both of these individuals state that long before Sharma obtained his design patents, Octavius had been purchasing numerical and star-shaped sparklers from a Czech company, Drutep. *Id.* Statement of Kerry Healy ¶ 2; *id.*, Statement of Nick Dale ¶ 2. Sharma testified that Drutep was the first company he used to manufacture numerical sparklers. Dunne Decl., Ex. B.

There is no dispute that the plaintiff did not disclose any evidence regarding Drutep's sale of numerical and star-shaped sparklers prior to the March 26, 2010 discovery deadline. *See* Def.'s Validity Mot. at 4-5; *see generally* Pl.'s Opp'n to Def.'s Validity Mot. Indeed, the correspondence submitted by the parties makes clear that the plaintiff disclosed these materials, along with all its evidence concerning numerical and star-shaped sparklers sold in Europe, China and Australia, for the first time with its final contentions on April 12, 2010, Def.'s Validity Mot., Ex. 9, just two weeks before the deadline for filing motions for summary judgment, Minute Order (Jan. 20, 2010). This late disclosure occurred despite the fact that the defendant had issued document requests and interrogatories to the plaintiff in December 2008 requiring the disclosure of all evidence of prior art, Def.'s Validity Mot., Ex. 3, 4.

It is also clear that the plaintiff's failure to disclose this evidence prior to the close of discovery resulted from the plaintiff's lack of diligence in investigating its case. In its October 2008 amended answer to the defendant's counterclaims, the plaintiff challenged the validity of

the defendant's patents and expressly alleged that the defendant had failed to disclose evidence of prior art to the PTO. *See* Am. Answer to Countercl. ¶¶ 31, 43-48. By that time, plaintiff's counsel must have been aware of some evidentiary basis for these allegations. *See* FED. R. CIV. P. 11(b)(3) (stating that by presenting a pleading, motion or other paper to the court, the attorney certifies that to the best of his or her knowledge, formed after a reasonable inquiry, the factual contentions "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"). Furthermore, the plaintiff was aware of Drutep's role in the manufacture of the defendant's sparklers by at least December 2009, when it deposed Sharma. Pl.'s Opp'n to Def.'s Validity Mot., Ex. B. Nonetheless, the plaintiff did not disclose any evidence regarding Drutep's alleged prior production of numerical and star-shaped sparklers until months later, on the eve of the summary judgment deadline set by the court. Def.'s Validity Mot., Ex. 9.

The only excuse offered by the plaintiff for this delay is the suggestion, made in the declaration of plaintiff's counsel, that the investigation that ultimately led to the discovery of this prior art was sparked by the revelation in January 2010 that Seaby had discarded Sharma's original drawings. Dunne Decl. ¶¶ 9-13, 18. Yet the plaintiff has not explained how this revelation suddenly prompted it to investigate the issue of prior art or, more importantly, how it excuses its failure to that point to investigate the validity of the patents. *See id.* After all, the plaintiff had raised the issue of invalidating prior art more than a year earlier in October 2008. Answer to Countercl. ¶ 30. Indeed, although counsel exchanged numerous e-mails regarding the plaintiff's belated document production, at no point in these contemporaneous discussions did plaintiff's counsel cite Seaby's destruction of evidence as a justification for the lateness of its

disclosures.[4]  *See* Def.'s Validity Mot., Ex. 9, 10; Dunne Decl., Ex. F; Def.'s Opp'n to Pl.'s Mot. for Leave to Amend, App. G, H.  In sum, counsel's reliance on Seaby's purported failure to maintain records appears to be a post hac rationalization and does not excuse counsel's lack of diligence.

Moreover, even if there were some justification for the lateness of the plaintiff's investigation or its failure to complete discovery before the discovery deadline, that still would not excuse the plaintiff's failure to produce *any* evidence regarding this prior art until after the close of discovery.  Had this evidence been produced on a rolling basis, at least some of the prejudice to the defendant might have been avoided, as the defendant would have been able to obtain some discovery on these new materials.  Instead, in an act reeking of gamesmanship and bad faith, the plaintiff waited until discovery closed to produce *all* of this evidence of prior art in a single burst.  Def.'s Validity Mot., Ex. 9.

In apparent recognition of the prejudice caused by this conduct, plaintiff's counsel agreed that the plaintiff would not rely on any of the evidence disclosed after the discovery deadline at summary judgment, so that the parties could keep their deadline for filing motions for summary judgment.  Def.'s Validity Mot., Ex. 10; Dunne Decl. ¶ 21 ("During the call . . . referred to by [the plaintiff], I indicated . . . that I would not use new material disclosed after the close of discovery for summary judgment inasmuch as counsel for [the defendant] had stated [that they] would be prejudiced by the use of such material disclosed after the close of discovery.").  Nonetheless, the plaintiff reneged on that agreement by relying on that evidence in opposing the

---

[4]        Instead, plaintiff's counsel simply asserted, without any explanation or limitation, that the plaintiff would continue to investigate its case and supplement its responses to the defendant's discovery requests as needed, regardless of the discovery deadline.  Dunne Decl., Ex. F; Def.'s Opp'n to Pl.'s Mot. for Leave to Amend, Ex. H.

defendant's motion for summary judgment on the issue of validity. Pl.'s Opp'n to Def.'s Validity Mot. at 5-6.

At the very least, the conduct of plaintiff's counsel constitutes a clear violation of the court's scheduling order, which required the parties to complete discovery by March 26, 2010.[5] Minute Order (Jan. 20, 2010). Counsel's decision to disregard the court-ordered discovery deadline has clearly prejudiced the defendant, which prepared its final contentions and motions for summary judgment without having had the opportunity to obtain discovery regarding this newly disclosed evidence.

Federal Rule of Civil Procedure 16(f) provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." FED. R. CIV. P. 16(f)(1)(C). Rule 37(b)(2)(A), in turn, expressly authorizes the court to impose the following sanctions:

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination

*Id.* 37(b)(2)(A)(ii)-(vii).

Accordingly, the Federal Rules authorize the court to dismiss the plaintiff's claims in whole or part or prohibit the plaintiff from relying on the evidence produced after the close of

---

[5] As previously noted, under the court's original scheduling order, discovery was scheduled to close on January 26, 2010, Minute Entry (Nov. 3, 2008), and was extended to March 26, 2010 at the parties' request, Minute Order (Jan. 26, 2010). Although the request to extend the discovery deadline was filed by the parties jointly, *see* Joint Stipulation to File Request for an Extension of Present Schedule, the plaintiff does not dispute that this request was made at the plaintiff's insistence, *see* Pl.'s Statement of Material Facts ¶ 6; Def.'s Validity Mot. at 4.

discovery as a sanction for its failure to comply with the court's scheduling order.[6] *Id.*; *see also, e.g.*, *Tex. Instruments Inc. v. Powerchip Semiconductor Corp.*, 2007 WL 1541010, at *12 (S.D.N.Y. May 24, 2007) (precluding the defendant from relying on documents produced after the close of discovery pursuant as a sanction under Rule 16(f)). The court, however, is not persuaded that such severe sanctions are appropriate here, despite the plaintiff's abusive conduct. The Supreme Court has "emphasized the importance to the public at large of resolving questions of patent validity." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 100 (1993) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 330 (1971)). The evidence of prior art belatedly disclosed by the plaintiff has the potential at least to weigh heavily in the court's validity analysis. *See, e.g.*, Pl.'s Opp'n to Def.'s Validity Mot., Statement of Kerry Healy ¶ 2. Furthermore, the court is confident that less severe sanctions can minimize the unfair prejudice that would result from allowing the plaintiff – and the court – to rely on this evidence. *See Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 187 (D.C. Cir. 1985) (noting that dismissal of a case "is a sanction of last resort to be applied only after less dire alternatives have been explored without success"); *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1209 (7th Cir. 1984) (noting that the imposition of less severe sanctions, such as the award of attorney's fees, may be "sufficiently effective in alerting an irresponsible litigant to the seriousness of his or her neglect, protecting the interests of the other litigants in the case, and vindicating the integrity of the court").

---

[6] The court also possesses the inherent authority to impose similar sanctions based on the plaintiff's bad faith conduct in waiting until just after the close of discovery to produce this evidence of prior art, agreeing not to use that information on summary judgment and then simply disregarding that agreement. *See Webb v. Dist. of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) (observing that "[a] district court may order sanctions, including a default judgment, for misconduct either pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure . . . or pursuant to the court's inherent power to 'protect [its] integrity and prevent abuses of the judicial process'" (quoting *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995))).

Conversely, simply staying the proceedings to provide the defendant an opportunity to obtain additional discovery is not an acceptable alternative. The defendant, after all, has already expended substantial resources in preparing final contentions and motions for summary judgment, which will likely have to be amended to account for any newly discovered information. Furthermore, allowing additional discovery will inevitably delay the resolution of this matter. Finally, staying the proceedings without any additional sanction provides no disincentive for parties who might otherwise disregard the court's scheduling orders. *See Smith v. Georgetown Univ.*, 1993 WL 18927, at *1 n.* (D.D.C. Jan. 14, 1993) ("Plaintiffs sought no enlargement of time from the court for responding to the discovery requests, and sought no protective order. They cannot simply ignore discovery requests and deadlines, and not incur sanctions.").

In light of these considerations, the court will permit the plaintiff to rely on this belatedly disclosed evidence of prior art and denies without prejudice the defendant's motion for summary judgment on the validity of its design patents. *See* 10A FED. PRAC. & PROC. § 2718 (observing that "it is within the trial court's discretion to deny a motion for summary judgment without prejudice to its being renewed at a later time and the court may grant a renewed motion upon a showing of good cause"). In addition, the court shall re-open discovery to the defendant for a period of a ninety days to permit the defendant an opportunity to obtain discovery regarding the plaintiff's newly disclosed evidence. *See In re Breast Implant Cases*, 942 F. Supp. 958, 961 (S.D.N.Y. 1996) ("In cases where additional information is required to adequately pass on a motion for summary [judgment], the practice has been to deny the motion, with leave to renew, allowing further discovery and development of evidence.").

Plaintiff's counsel[7] shall, however, pay the reasonable attorney's fees and costs incurred by the defendant in revising its final contentions (including the fees and costs associated with preparing new expert reports) and amending and re-filing its motions for summary judgment (including any oppositions and replies) to address the evidence of prior art disclosed after the discovery deadline.[8] *See* FED. R. CIV. P. 16(f)(2) (providing that "the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust"); *see also Burton v. R.J. Reynolds Tobacco Co.*, 203 F.R.D. 636, 641-42 (D. Kan. 2001) (sanctioning plaintiff's counsel for failing to comply with the court's scheduling orders and ordering plaintiff's counsel to pay attorney's fees, witness fees and costs associated with re-deposing witnesses based on evidence disclosed after the discovery deadline). Plaintiff's counsel shall also pay all reasonable attorney's fees and costs incurred by the defendant in re-deposing any witnesses who have already been once deposed, insofar as additional depositions are needed to address the newly disclosed evidence. *See Burton*, 203 F.R.D. at 641-62.

---

[7] To date, the court has been presented with no evidence that the plaintiff shares responsibility for the abusive conduct of its counsel. *See Seismic Int'l Research Corp. v. South Ranch Oil Co., Inc.*, 793 F.2d 227, 230 (10th Cir. 1986) (noting that "a court should, when possible, enter sanctions against counsel, and not the parties they represent" when imposing sanctions pursuant to Rule 16(f)).

[8] The defendant shall submit a detailed accounting of these expenses, supported by contemporaneous time records, one week after any renewed motions for summary judgment have been fully submitted. This accounting shall be sufficiently detailed to permit the court to ascertain that the expenses resulted from the plaintiff's disclosure of evidence after the discovery deadline.

## B.  The Court Denies Without Prejudice the Parties' Cross-Motions
## on the Issue of Infringement

In addition to the defendant's motion for summary judgment on the issue of validity, the parties have also filed cross-motions on the issue of infringement.  *See generally* Def.'s Mot. for Summ. J. that the Pl.'s Star Sparklers Infringe Patent D451,164;  Def.'s Mot. for Summ. J. that the Pl.'s Numerical Sparklers Infringe Patent D447,207; Def.'s Mot. for Summ. J. that the Pl.'s Infringement of Patent D451,164 and D447,207 Has Been Willful; Pl.'s Mot. for Summ. J. for Non-Infringement.  Although it may be possible for the court to resolve the issue of infringement before addressing the validity of the defendant's design patents, *see Pandrol USA, LP v. Airboss Ry. Products, Inc.*, 320 F.3d 1354, 1364-65 (Fed. Cir. 2003) (observing that "patent infringement and invalidity are separate and distinct issues"), the court must address the validity issue regardless of its ruling on the issue of infringement, *see Sinclair & Carroll Co. v. Interchemical Corp.*, 325 U.S. 327, 330 (1945) (stating that the lower courts should inquire fully into the validity of the patent even if it is possible to dispose of the case on the ground of non-infringement).  Furthermore, addressing the issue of infringement before resolving the question of validity may render the latter an advisory ruling.  *See Altvater v. Freeman*, 319 U.S. 359, 363 (1943) ("To hold a patent valid if it is not infringed is to decide a hypothetical case."); *see also Ditto, Inc. v. Minn. Min. & Mfg. Co.*, 336 F.2d 67, 69 (6th Cir. 1964) ("The validity question is of greater public importance than the infringement issue and it is usually the better practice to first consider the validity issue.").  Finally, although the issues of patent validity and infringement are separate and distinct, the possibility remains that in the course of investigating the former issue, additional evidence may be uncovered relevant to the latter.

Thus, rather than addressing the issues of validity and infringement in a piecemeal fashion, the court denies without prejudice the parties' cross-motions for summary judgment on

the issue of infringement with leave to re-submit these motions following the close of the supplemental period of discovery ordered above.

### C.  The Court Grants in Part and Denies in Part the Plaintiff's Motion for Leave to Amend Its Pleadings

#### 1.  Legal Standard for Amending Pleadings Pursuant to Rule 15(a)

Rule 15(a) governs the amendment of pleadings, stating generously that "[t]he court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a).  Courts shall "determine the propriety of amendment on a case by case basis."  *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 344 (D.C. Cir. 1997).  Whether to grant or deny leave to amend rests in the district court's sound discretion.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Such discretion is not unlimited, however, for it is an "abuse of discretion" when a district court denies leave to amend without a "justifying" or sufficient reason.  *Id*. at 181, 182; *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Reasons that justify a denial of leave to amend include undue delay, bad faith, repeated failure to cure a pleading's deficiencies, undue prejudice to the opposing party, and futility of amendment.  *Foman*, 371 U.S. at 182; *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999); *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1084 (D.C. Cir. 1998).

Courts require a sufficient basis for denial of leave to amend because the purpose of pleading under the Federal Rules of Civil Procedure is "to facilitate a proper decision on the merits," not to set the stage for "a game of skill in which one misstep by counsel may be decisive to the outcome."  *Foman*, 371 U.S. at 181-82 (citing *Conley v. Gibson*, 355 U.S. 41, 48 (1957)).  Under Rule 15(a), the non-movant generally carries the burden in persuading the court to deny leave to amend.  *Cf. Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 n.2 (5th Cir. 1981) (endorsing exceptions to the general rule that the burden of persuasion rests with the non-movant

in the Rule 15(a) context); *see also Gudavich v. District of Columbia*, 22 F. App'x 17, 18 (D.C. Cir. 2001) (noting that the non-movant "failed to show prejudice from the district court's action in allowing the [movant's] motion to amend") (unpublished decision).

### 2. The Plaintiff's Motion for Leave to Amend Is Unduly Delayed and Would, if Granted, Unfairly Prejudice the Defendant

The plaintiff has moved to amend its pleadings to include additional affirmative defenses concerning the alleged invalidity of the defendant's design patents. *See* Pl.'s Mot. for Leave to Amend, Proposed Am. Compl. & Am. Answer ¶¶ 23-30, 36-46. The plaintiff also seeks leave to supplement its pleadings with a claim of inequitable conduct, based on allegations that the defendant and Sharma withheld information regarding prior art when they applied for the '207 and '164 Patents. *Id.* ¶¶ 56-69. Both the newly proposed claim and the proposed defenses are based on the evidence of prior art disclosed after the close of discovery. *See id.* ¶¶ 23-30, 36-46, 56-69; *see also supra* Part III.A.2.c. Lastly, the plaintiff seeks leave to add Sharma and an entity known as Samrok Canada, Inc. as defendants in this action. Pl.'s Mot. for Leave to Amend, Proposed Am. Compl. & Am. Answer ¶¶ 3-4.

The plaintiff contends that the court should grant it leave to amend its pleadings because it requested leave to amend promptly after receiving the new evidence of prior art, the new evidence is crucial to its defense against the infringement claims and the public interest demands a full exploration into the validity of a patent.[9] Pl.'s Mot. for Leave to Amend at 4; Pl.'s Reply in Support of Pl.'s Mot. for Leave to Amend at 2-3. The plaintiff also requests that the court re-open discovery for a period of ninety days to permit the parties to obtain additional discovery regarding these new allegations. *Id.* at 3. The defendant responds that the plaintiff's motion

---

[9] The plaintiff also contends, as it did in its opposition to the defendant's validity motion, that its discovery of this new evidence was delayed by Seaby's allegedly wrongful destruction of certain materials sent to him by Sharma. Pl.'s Mot. for Leave to Amend at 4. As previously discussed, however, this contention is not credible. *See supra* Part III.A.2.c n.3.

should be denied because the plaintiff was not diligent in investigating these new allegations and acted in bad faith in failing to disclose any evidence regarding these new allegations during discovery. Def.'s Opp'n to Pl.'s Motion for Leave to Amend at 3-5. In addition, the defendant asserts that it would be prejudiced by this last minute addition of new allegations. *Id.* at 7.

As noted above, both undue delay and prejudice justify the denial of leave to amend. *See Foman*, 371 U.S. at 178; *Richardson*, 193 F.3d at 548-49; *see also* 6 FED. PRAC. & PROC. § 1488 (noting that "courts have not allowed amendments to be made that seek to add new claims or theories, parties, or new defenses or counterclaims to the action when allowing the amendment is deemed to be unduly burdensome, given the stage to which the litigation has advanced"). Here, the plaintiff's motion for leave to amend comes after the preparation of expert reports, after the close of discovery and after the submission of motions for summary judgment. *See generally* Pl.'s Mot. for Leave to Amend. The tardiness of the plaintiff's motion is not excused by the plaintiff's failure to discover evidence of prior art until after the close of discovery, for as previously discussed, the plaintiff's purported failure to uncover this evidence earlier in the litigation resulted from its lack of diligence in investigating its case. *See supra* Part III.A.2.c. The plaintiff's failure to seek leave to amend until after the close of discovery and the submission of summary judgment briefs constitutes an unjustifiable lack of diligence that plainly weighs against granting leave to amend.

Moreover, it is clear that such a last minute amendment would, if permitted, unfairly prejudice the defendant. Although the defendant will have an opportunity to obtain discovery regarding the evidence of prior art disclosed after the discovery deadline, *see supra* Part III.A.2.c, the addition of new parties, new defenses and new claims would necessitate yet additional discovery and result in even more delay. *See In re Vitamins Antitrust Litig.*, 217

F.R.D. 30, 33 (D.D.C. 2003) (denying the plaintiff's motion for leave to amend, which would have resulted in new claims that the defendant would be forced to deal with after discovery, because "[a]llowing the addition of this claim at this time [would] create[] an undue delay in trial preparation and would thus be prejudicial"). This prejudice, coupled with the plaintiff's lack of diligence in investigating its case and seeking leave to amend its pleadings, justifies denial of the plaintiff's motion for leave to amend. *See Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc.*, 156 F.3d 49, 51-52 (1st Cir. 1998) (holding that the district court did not abuse its discretion in denying the plaintiff's motion to amend the complaint to add an additional party because the motion, which was filed near the close of discovery, was tardy and the plaintiff lacked any sufficient excuse for delaying so long before moving for leave to amend); *Becker v. Dist. of Columbia*, 258 F.R.D. 182, 184-85 (D.D.C. 2009) (denying the defendants' motion for leave to amend their answer on the grounds of undue delay because the motion came years after the filing of the answer and after discovery had closed and motions for summary judgment had been filed); *see also Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993) (affirming the district court's denial of a motion for leave to amend on the grounds of undue delay because leave to amend was not sought until fifteen months after motions to dismiss had been filed); *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C. Cir. 1987) (affirming the denial of a motion for leave to amend on the grounds of undue delay because the motion came years after the plaintiff filed its first complaint and after the close of discovery and after the court had resolved a motion for summary judgment). The court therefore denies the plaintiff's motion for leave to amend.[10]

---

[10]     The denial of the plaintiff's motion for leave to amend does not preclude the plaintiff from relying on the evidence of prior art disclosed after discovery to attack the validity of the defendant's patents. The plaintiff's operative pleadings include an affirmative defense of invalidity, invoking, *inter alia*, 35 U.S.C. § 103, prohibiting patents for inventions anticipated by

## IV. CONCLUSION

For the foregoing reasons, the court denies without prejudice the parties various motions for summary judgment, denies the plaintiff's motion for leave to amend, sanctions the plaintiff's counsel based on his failure to abide by the court's scheduling order and re-opens discovery for a period of ninety days. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of February, 2011.

RICARDO M. URBINA
United States District Judge

---

prior art. Am. Answer to Countercl. ¶ 31. The evidence of prior art is plainly relevant to that affirmative defense.